UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PRO CUSTOM SOLAR LLC d/b/a MOMENTUM SOLAR<br><br>Plaintiff,<br><br>vs.<br><br>SALESFORCE.COM, INC.<br><br>Defendant. | Civ. No. _____ 1:20-cv-4738<br><br>**COMPLAINT** |

Plaintiff Pro Custom Solar LLC d/b/a Momentum Solar ("Momentum" and sometimes "Plaintiff"), by and through its counsel, Schenck, Price, Smith & King, LLP, by way of a Complaint against Defendant Salesforce.com, Inc. ("Salesforce"), alleges as follows:

## NATURE OF THE ACTION

1. This diversity action arises out of Defendant's breach of contract with Momentum.

2. Momentum is engaged in the sale, design and installation of solar-electric systems to residential property owners in New Jersey, New York, Pennsylvania, California, Florida, Connecticut and Texas. Momentum's customer relations management computer system is a vital aspect of its business.

3. Salesforce offers customer relationship management (hereinafter "CRM") technology to manage relationships and interactions between companies and their customers and potential customers. Salesforce advertises that its integrated CRM platform provides a single, shared view of every customer to every department within a business including marketing, sales, commerce, and service. Salesforce offers services and support to maximize its CRM.

4.     Momentum and Salesforce entered into a Master Subscription Agreement (hereinafter "Agreement") on or about April 26, 2017 and additional order forms as described below.

5.     The Agreement subscribed Salesforces' CRM to Momentum for a substantial fee due to Salesforces' aggressive and coercive sales tactics which included the sale of far more licenses than were needed and/or could be materially delivered to Momentum.

6.     Salesforce warranted that its services and CRM would perform materially for the benefit of Momentum.

7.     Salesforce's services and CRM have failed to perform materially for Momentum.

8.     In fact, Salesforce's services and CRM have failed to perform at all.  Salesforce admits that it has failed to provide a "minimum viable product" to Momentum.  Momentum was never able to use Salesforces' CRM despite paying $1,056,929.39 since April 2017.

9.     Salesforce has breached the Agreement, breached its warranties to Momentum, made misrepresentations to Momentum and it has been unjustly enriched for receiving more than $1M.  Momentum has been damaged as a result.

**PARTIES**

10.    Momentum is a limited liability company with its principal place of business at 3096 Hamilton Blvd, Building B, South Plainfield, NJ 07080.

11.    At all relevant times, Momentum had and continues to have three members, Arthur Souritzidis, Sung Lee, and Asil Sheikh.  Arthur Souritzidis, Sung Lee, and Asil Sheikh are domiciled, and have been domiciled during all relevant times, in the State of New Jersey.

12.    Salesforce is a Delaware corporation offering its cloud-based software across the globe.

13. Salesforce maintains its principal place of business at The Landmark @ One Market, Suite 300, San Francisco, California 94105 and its New York office at 1095 Avenue of the Americas, 6th Ave, New York, New York 10036.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and Defendant and the amount in controversy exceeds $75,000.

15. This Court has personal jurisdiction over Salesforce because it maintains an office at 1095 Avenue of the Americas, 6th Ave, New York, New York 10036, which office was used to sell Salesforce's services and CRM to Momentum at issue in this case; Salesforce regularly and systematically conducts business within New York State; because Momentum negotiated the Agreement with Salesforce officials present in New York; and because the parties agreed to the exclusive jurisdiction of the federal and state courts located within New York City, New York per sections 12.10 and 12.11 of the Agreement.

16. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including that the contracts at issue were negotiated by telephone and email with Salesforce officials located in this District; a substantial portion of the work performed by Salesforce was performed at its offices located in this District; and because the parties agreed to the exclusive venue of the federal and state courts located within New York City, New York per sections 12.10 and 12.11 of the Agreement over any dispute relating to the Agreement.

17. The Agreement between the parties identifies the application of the laws of the State of New York.

## FACTS COMMON TO ALL COUNTS

18. Momentum and Salesforce entered into a Master Subscription Agreement (hereinafter "Agreement") on or about April 26, 2017.

19. Momentum and Salesforce entered into an Order Form on or about April 26, 2017 and then a second Order Form on or about June 22, 2018.

20. The Agreement and Order Forms subscribed Salesforces' services and CRM to Momentum for a substantial fee over the course of several years.

21. Salesforce was bound to provide its services and CRM that would perform materially for the benefit of Momentum according to the terms of the Agreement and Order Forms.

22. Momentum has paid $1,056,929.39 to date for the licenses, subscriptions, and support.

### Salesforce's Failed CRM and Support Breaches the Agreement

23. Per section 2.1 of the Agreement, Salesforce was responsible to (a) make its services and CRM available to Momentum pursuant to the parties' Agreement and applicable Order Forms, (b) provide applicable and standard support for the services and CRM to Momentum at no additional charge, and/or upgraded support if purchased, (c) use commercially reasonable efforts to make its online services and CRM available 24 hours a day, 7 days a week, and (d) provide the services and CRM subject to Momentum's use in accordance with the parties' Agreement and the applicable Order Form.

24. Per section 8.3 of the Agreement, Salesforce expressly warranted that its services and CRM would perform materially.

25. Salesforce has failed to perform its responsibilities as outlined in the Agreement.

26. Salesforce's services and CRM did not perform materially for Momentum because Salesforce failed to deliver its services and its CRM that is useable, functional and integrated to Momentum.

27. Salesforce also failed to provide, implement and customize a utility necessary for Momentum to use the licenses and subscriptions it purchased.

28. Specifically, Salesforce failed to improve Momentum's business functions and the CRM provided is more cumbersome, time consuming and confusing to use than Momentum's current software systems that Momentum sought to improve.

29. Salesforce's CRM also failed to deliver major operational functions including, but not limited to, Accounting, Data Sheets for Proposal, Sales Scheduling, Sales Rep Experience, Team List View Columns, Quality Inspections, Concessions Calculator, and Field Ops Picture Tagging Flow that meet Momentum's current lead-to-project business processes, failed to properly integrate or improve the integration and utilization of the disparate software platforms and failed to implement a system that meets, at a minimum, the same functionality, operational efficiency and user interface and ease of use of Momentum's current system.

**Salesforce Oversells Licenses to Momentum**

30. Momentum purchased 750 Lightening Sales Cloud – Enterprise Edition licenses to use Salesforces' CRM with a three-year subscription.

31. Momentum also initially purchased 350 Lightening Field Service – Field Technician – EE (Restricted Use) licenses with a three-year subscription.

32. Per the terms of the June 22, 2018 Order Form, the Lightening Field Service – Field Technician – EE (Restricted Use) licenses was increased to 383.

5

33. Salesforces wrongly sold Momentum more than 1,000 licenses for its CRM product before implementation even began and functionality was remotely possible.

34. Salesforce knew that the total number of licenses sold greatly exceeded Momentum's needs.

35. At the time of the initial Order Form, Salesforce knew that its CRM could not be operational for months, but misrepresented that licenses were required within days of execution of the Agreement and initial Order Form.

36. At the time of the second Order Form, Salesforce knew that its CRM was inoperable for Momentum, but sold even more field licenses knowing they could not be used.

37. Momentum purchased the exorbitant number of licenses reasonably relying upon the misrepresentations of Salesforce and their aggressive sales tactics.

38. Momentum paid over one million dollars for the licenses without receiving any benefit.

**Salesforce Fails to Provide Standard and Upgraded Support to Momentum**

39. Momentum also purchased standard and upgraded support from Salesforce.

40. Specifically, Momentum purchased Salesforces standard and upgraded support for a three-year term including (a) Courtesy Administrators for Premier+ Success –Enterprise Edition; and (b) Premier+ Success Plan (Support & Admin) – May 15, 2017 to May 14, 2018 for $60,686.20

41. Momentum also purchased a Sandbox (Full Copy) from Salesforce relative to the support Salesforce was required to provide.

42. Over the course of several years, Momentum outlined and sought support from Salesforce to remedy the troubles it identified with Salesforces' CRM.

43. Salesforce failed to provide standard and upgraded support to resolve the issues repeatedly identified by Momentum.

44. Salesforces' standard and upgraded support failed to deliver a functional CRM to Momentum.

45. Momentum paid hundreds of thousands of dollars for the support and sandbox to resolve issues by Salesforces' support without receiving any benefit.

**Salesforce Misrepresentations**

46. By and through its employees, Salesforce repeatedly misrepresented to Momentum that Salesforce could and would customize its services and CRM so that complete integration would be achieved quickly and without significant issues.

47. Specifically, Salesforce misrepresented that it never encountered a failed implementation during its initial sales pitch to Momentum. Salesforce also misrepresented that it was the best in the world.

48. By and through its employees, Salesforce repeatedly misrepresented to Momentum that Salesforce's services and CRM would integrate easily and quickly with the third-party applications used by Momentum.

49. Momentum reasonably relied upon Salesforces' misrepresentations when it purchased 1,000's of licenses for a three-year term at a substantial cost.

50. Salesforce continued to misrepresent its functions to Momentum even after Momentum expressed its concerns regarding lack of functionality.

51. In the fall of 2019, Momentum and Salesforce engaged in numerous communications regarding Salesforces' failed services and CRM.

52. On October 23, 2019, Salesforce executive Brent Vandenberg conceded that Salesforce failed to provide a "minimum viable product" to Momentum.

53. However, rather than address and remedy the issues identified, Salesforce engaged in another hard sell to commit Momentum to another three-year subscription.

54. As a part of that hard sell, Salesforce presented a "Customer Stories" presentation on November 25, 2019 with claims of enormous success including (a) claimed 120% increase in sales territory and 58% decrease in customer service onboarding time after converting to Salesforce; (b) claimed 407% increase in quoting efficiency in 3 years and 4 data sources consolidated after converting to Salesforce; (c) claimed 5X increase in sales productivity after converting to Salesforce; and (d) claimed 20% increase in onsite sales and 4.5X increase in field tech user adoption after converting to Salesforce.

55. Salesforce also presented a "Why Salesforce?" presentations on December 3, 2019 with additional claims of staggering success including (a) +25% increase in revenue; (b) +30% increase in customer satisfaction; (c) +36% increase in overall return on investment; (d) +38% faster resolution time; and (e) +39% increase in forecast accuracy.

56. On December 4, 2019, Salesforce also presented a research study regarding the purported success enjoyed by another similarly situated solar business after it converted to Salesforce CRM. The report claims that the similarly situated business received +1342% increase in overall return on investment with a payback period of only 0.2 years.

57. Salesforce made these representations knowing they were impossible for Momentum to achieve given the lack of functionality Momentum had experienced with Salesforce's services and CRM since April 2017.

58. Salesforce made these representations knowing Momentum would rely upon them and not terminate the Agreement in the Fall of 2019.

59. Rather than honor its contractual obligations to remedy the many issues identified by Momentum, Salesforce merely attempted to negotiate a three-year extension of the subscriptions purchased.

### **Momentum Satisfies its Contractual Responsibilities**

60. Momentum met or exceeded all its obligations and responsibilities identified in the Agreement.

61. Momentum paid Salesforce $1,056,929.39 to date for Salesforces' defective services and CRM.

62. Momentum has been invoiced a total of $1,433,891.59 for Salesforces' defective services and CRM.

63. Momentum has withheld additional payments pending resolution of Salesforce's failure to meet its contractual requirements.

64. Momentum confirmed its nonrenewal of services and expiration of the Agreement on February 14, 2020 via communication dated November 14, 2019.

65. As a direct and proximately cause of Salesforce's actions and inactions, Momentum has been damaged in the sum of $1,056,929.39.

### **COUNT ONE**
*(Breach of Contract)*

66. Momentum incorporates the allegations above as though fully set forth in this paragraph.

67. The parties executed an Agreement and Order Forms pursuant to which Salesforce agreed to deliver its services and CRM to Momentum.

68. Salesforce breached the Agreement and Order Forms as alleged above.

69. As a result of these breaches, Momentum has suffered and continues to suffer damages.

WHEREFORE, Momentum respectfully requests that judgment be entered against Salesforce as follows:

    A. Awarding Momentum damages in the amount of $1,056,929.39;

    B. Awarding Momentum pre-judgment interest and post-judgment interest;

    C. Any and all other relief deemed equitable and just by the Court.

## COUNT TWO
*(Breach of Express and Implied Warranties)*

70. Plaintiffs repeat and reiterate each and every allegation set forth above as if same were set forth at length herein.

71. Salesforce expressly and impliedly warranted its services and CRM.

72. Salesforce's failure to properly deliver operational services and CRM to Momentum was in breach of its warranties.

73. Salesforce's failure to provide support to address and remedy its services and CRM for Momentum after the issues were brought to the its attention was in breach of its warranties.

74. As a result of Salesforce's breaches of warranties, Momentum has and will continue to sustain substantial damages.

WHEREFORE, Momentum respectfully requests that judgment be entered against Salesforce as follows:

    A. Awarding Momentum damages in the amount of $1,056,929.39;

    B. Awarding Momentum pre-judgment interest and post-judgment interest;

C.  Any and all other relief deemed equitable and just by the Court.

## COUNT THREE
*(Misrepresentation)*

75. Plaintiffs repeat and reiterate each and every allegation set forth above as if same were set forth at length herein.

76. By virtue of their special relationships with, and conduct toward, Momentum and/or because Salesforce assumed a fiduciary duty toward Momentum, Salesforce assumed a duty to give materially accurate information to Momentum and to disclose material facts relating to its services and CRM.

77. The nature of Momentum's relationship with Salesforce was of trust and confidence.

78. Salesforce was in a position of superior expertise and knowledge than Momentum with respect to its services and CRM. Moreover, Salesforce held itself out as having expertise in these issues.

79. Momentum reasonably relied upon the superior expertise and knowledge of Salesforce.

80. Salesforce made misrepresentations and omissions of material fact to Momentum, and did so negligently or with reckless disregard for Momentum's rights tantamount to intentional wrongdoing.

81. Salesforce made the misrepresentations and omissions with negligent or grossly negligent disregard for their truth or falsity, with knowledge that the information that was the subject of their material misrepresentations and omissions was desired by Momentum for a serious purpose and that Momentum intended to rely upon such information, and with the intention to induce such reliance.

82. If Salesforce did not know that the material misrepresentations made to Momentum were false, it was negligent in not knowing and in making these misrepresentations to Plaintiffs.

83. Momentum actually and reasonably relied on material misrepresentations and omissions of Defendants.

84. Salesforce's negligent misrepresentations have and will cause Momentum damages in the form of monetary damages, attorneys' fees, and costs.

WHEREFORE, Momentum respectfully requests that judgment be entered against Salesforce as follows:

    A. Awarding Momentum compensatory and consequential damages;

    B. Awarding Momentum pre-judgment interest and post-judgment interest;

    C. Awarding Momentum attorney fees and costs; and

    D. Any and all other relief deemed equitable and just by the Court.

### **COUNT FOUR**
*(Unjust Enrichment)*

85. Plaintiff incorporates the allegations above as though fully set forth in this paragraph.

86. Momentum paid Salesforce $1,056,929.39 for its defective services and CRM.

87. The retention by the Salesforce of the $1,056,929.39 is unjust.

WHEREFORE, Momentum respectfully requests that judgment be entered against Salesforce as follows:

    A. Awarding Momentum compensatory and consequential damages;

    B. Awarding Momentum pre-judgment interest and post-judgment interest;

    C. Awarding Momentum attorney fees and costs; and

D. Any and all other relief deemed equitable and just by the Court.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Dated: Florham Park, New Jersey
June 19, 2020

By: ___/s/ John P. Campbell_____
**SCHENCK, PRICE, SMITH & KING, LLP**
Michael J. Marotte (MM-5795)
John P. Campbell (JC-8746)
220 Park Avenue
Florham Park, NJ  07932
*Attorneys for Plaintiff*
*Pro Custom Solar LLC d/b/a Momentum Solar*